# Huston *versus* Ticknor & Co.

| 99 | 231 |
| 201 | 441 |

1. Upon the distribution of the proceeds of certain real estate sold at sheriff's sale a subsequent judgment creditor claimed priority over a prior judgment creditor by virtue of a writing under seal purporting to be under the hand and seal of such prior judgment creditor, whereby she agreed to postpone the lien of her judgment. The prior judgment creditor denied having executed the writing, whereupon an issue was framed to determine whether it was her act and deed. *Held*, that the proper course would have been so to frame this issue as to constitute the party alleging the instrument to be genuine the plaintiff, and the party denying its genuineness the defendant.

2. In the above case an issue was framed without objection by either party wherein the creditor who denied having executed the postponement was constituted the plaintiff, and the subsequent creditor was constituted defendant. On the trial, the plaintiff herself went upon the stand, denied the execution of the paper, and rested. Defendant then offered the paper in evidence, but without proving its execution. *Held*, that it was error to admit the paper in evidence.

3. Notwithstanding the form of the issue, the burden of proof was on the defendant in the above case to establish the genuineness of the paper in question.

4. A subscribing witness is one who was present at the time of signing the instrument, or who was called in immediately afterwards, who either actually saw the party signing the instrument or had an acknowledgment of the signature made to him by such party, and who thereupon at the time subscribed his name as a witness of the execution at the request or with the assent of the party signing the same.

5. If, however, a person present at the execution of an instrument does not subscribe to the same as a witness at that time, but does so subscribe afterwards and without request, he is not to be deemed a subscribing witness.

6. Proof of the signature of a person subscribing to an instrument in the manner last specified does not constitute proof of the execution of the instrument.

November 22d 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Crawford county* : Of October and November Term 1881, No. 320.

[Huston *v.* Ticknor & Co.]

Feigned issue.   By virtue of several executions the real estate of one W. T. McMurtry was sold at sheriff's sale in November 1880, and the proceeds were paid into court.   Before the auditor, appointed to report distribution, the fund was claimed on the one hand by Ticknor & Co., and on the other hand by Caroline A. Huston, both of whom held judgments against McMurtry.   Miss Huston's judgments were entered October 1876.   Ticknor & Co.'s judgments had been originally entered March 8th 1872.   They were not revived until after the expiration of five years, viz., on April 24th 1877.   Miss Huston therefore, claimed that her judgments, which had not expired, became the first liens on the real estate of McMurtry.

Ticknor & Co. claimed, however, that their judgments retained priority over those of Miss Huston by virtue of an alleged agreement under seal, executed by Miss Huston, dated April 24th 1877, which they produced, and which was as follows :

"Ticknor & Co. *v.* W. T. McMurtry. } In the Court of Common Pleas of Crawford county, Nos. 424, 425, 426, 427, 428, 429, 430, and 431, April Term 1872.

"And now, April 24th 1877, in consideration of the sum of one dollar, to me in hand paid by Messrs. Ticknor & Co., the receipt of which is hereby acknowledged, I do hereby agree that upon any distribution of the proceeds of sale of the real estate of W. T. McMurtry, upon the above or any other judgment or judgments against him, that the above named judgments, or any revival thereof, shall have priority and be first paid in any such distribution, before any judgment or judgments I now hold against the said W. T. McMurtry.

"Witness my hand and seal the day and year first above written.

"In presence of                                        C. A. Huston.   [seal.]
D. F. Booth.
W. T. McMurtry."

Miss Huston denied that she had ever executed this paper, and alleged that it was a forgery.   The auditor then certified the matter to the court, whereupon the court directed an issue, to determine the genuineness of the paper, the order framing the issue being as follows :

"And now, to wit: February 28th 1881, it is ordered that a feigned issue be formed, in which C. A. Huston shall be plaintiff, and Ticknor & Co., shall be defendants.   The following questions are to be determined in and by said issue :

"First.   Whether or not four certain judgments  .   .   .   .

in which Caroline A. Huston is plaintiff and W. T. McMurtry is defendant, are paid in whole or in part.

"Second. Whether or not a certain paper writing . . . . purporting to be a postponement of the lien of the said judgments to the lien of certain judgments held by Ticknor & Co. against W. T. McMurtry . . . . is the act or deed of the said C. A. Huston.

"Narr. shall be framed as on a wager, shall contain two counts and shall severally embrace the two propositions herein above stated. Plea and replication to follow as in similar cases."

No exception was taken to the form of the issue.

On the trial, before CHURCH, P. J., the plaintiff's counsel called Miss C. A. Huston, in her own behalf, who testified—the paper in dispute being shown to her—that though the signature to the paper looked like hers, she never signed it, nor authorized any one to sign it for her. The plaintiff then rested.

The defendant's counsel then offered in evidence the paper in dispute.

"Plaintiff's counsel object.

"By the Court.—Objection overruled.

"Plaintiff's Counsel.—They have not proven any signature to it.

"By the Court.—They do not have to; the very matter in dispute; you introduced it in evidence the first thing; it is in evidence, practically and substantially, and you may read it if you like; you could not go a step without it; this verdict would have to be for the defendant if that paper was not in evidence; it does not need to be proven; it is in dispute.

"Paper dated April 24th 1877, signed by C. A. Huston, and witnessed by D. F. Booth and W. T. McMurtry, read to the jury."

The defendants afterwards called D. F. Booth, a subscribing witness to the paper, who testified:

"I witnessed a paper; Dr. McMurtry and Miss Huston were present when I witnessed it; McMurtry and Miss Huston were standing at the desk, or to one side, and I was in the front of the store at work; I was called back and asked to sign the paper, which I did; it looks like my signature, with the exception of the D; the D is different from what I write; I never witnessed but one paper to my knowledge; I witnessed one paper; I have no recollection of witnessing any other; it was in 1877; I do not know what time in 1877; cannot tell if it was in the spring.

"Cross-examination—The paper I witnessed had something to do with the drug-store; that was my understanding of it at the time. . . . . Miss Huston's name was on the paper I

signed; whether McMurtry's was there or not I cannot say; I have not much recollection about that; it seemed to me that it was, and then that it was not; I cannot say anything about it at all."

McMurtry denied that he signed the paper as a subscribing witness.

E. L. Litchfield, one of the defendants, testified:

"I saw this paper (the postponement in question), April 24th 1877; Mr. Ticknor brought this paper in blank (the date and signatures were blank), at our office in Conneautville; Mr. Ticknor and Mr. McMurtry were there.

"Q. What was done with the paper?

"A. Mr. McMurtry took the paper, and said Miss Huston would sign it.

"Plaintiff's counsel object; objection overruled.

"By the Court.—Go on from where you stopped. McMurtry took the paper.

"Witness.—He took the paper from our office, and was gone a short time, and returned to our office with the name of C. A. Huston to it and D. F. Booth, and says, I saw Miss Huston sign it, and I saw D. F. Booth sign it as a witness, and took a pen and signed it himself, in our office, in our presence, in our store, as a witness, with the remark that two witnesses, perhaps, were better than one. That was done on April 24th 1877."

O. O. Ticknor, another of the defendants, testified:

"McMurtry came in the store and took the paper and went out, and was gone about fifteen minutes, and came back with it signed, as you see it, excepting his name, with Miss Huston's and Booth's names, and the date, and then he signed it himself."

The plaintiff presented, inter alia, the following points:

1st. That the plaintiff having sworn that she never signed the paper in question called a postponement, the defendants must satisfy the jury, by a preponderance of testimony, that she did sign and execute the said paper, or the verdict should be for the plaintiff. *Answer.*—The burden of proof in this case is upon the plaintiff. If this point means the burden is upon the defendant, it is declined.

4th. That if the jury believe the testimony of Ticknor and Litchfield, that W. T. McMurtry signed the paper called a postponement, in their office, saying that he had seen Miss Huston sign the same—Miss Huston not being present—he is not a subscribing witness to the paper, and proof of the genuineness of his signature is not evidence of the execution of the said paper by Miss Huston. *Answer.*—We answer this: McMurtry is a subscribing witness if he signed the paper in question, and proof of his signature is a part of the common law proof of the execution of the paper.

[Huston v. Ticknor & Co.]

The court instructed the jury, inter alia : " The plaintiff in this case is C. A. Huston, and she alleges it is not her signature, and the burden of proof is upon her to show that it is not her signature. She is the actor in this suit and the burden of proof is upon her. . . . .

" If you find this is her signature, then you find for the defendants, Ticknor & Co. If you find it is not her signature, you find for her, the plaintiff."

Verdict and judgment for the defendants. The plaintiff took this writ of error, assigning for error, inter alia, the admission in evidence of the paper in dispute before proof of its execution ; the answers to the above points, and the portion of the charge above quoted.

*Thomas Roddy* (with him *Humes* and *Frey*), for the plaintiff in error.—The paper was improperly admitted in evidence: Herrington v. Gable, 31 P. F. Smith 406 ; 1 Greenleaf on Ev. 569 ; Hines v. Barnitz, 8 Watts 45. The burden of proof was improperly placed on the plaintiff in the issue. The court could not, by ordering Miss Huston to be made plaintiff, compel her affirmatively to prove a negative, nor cast a presumption into the scale against her, which rightly belonged in her favor. The arrangement of the parties, which made her plaintiff and Ticknor & Co. defendants, might control the order of proceedings, for that is largely a matter of discretion with the court, but it could not abrogate the rules of evidence nor reverse the legal presumption for or against her. These are matters beyond the control of the court: 1 Greenleaf on Ev. § 74 ; Depew v. Clark, 1 Phila. 432 ; Costigan v. R. R. Co., 2 Denio 615 ; Powers v. Russell, 13 Pick, 76.

McMurtry, not having signed the paper in the presence of Miss Huston, was not a " subscribing witness " : 2 Bouvier's Law Dict. 555 ; 1 Greenleaf on Ev. § 569.

*D. C. McCoy* ( *W. R. Bole* with him), for the defendants in error.—The court was right in admitting the paper in evidence. It was the paper, the signature to which was in dispute. The plaintiff's counsel had just before shown it to the witness, the plaintiff, and she had testified with regard to it. It was practically in evidence by the plaintiff, and the cause could not be tried at all without that paper before the jury. Besides, the defendants called Booth, the subscribing witness, immediately. This cured the defect, if there was any, as ruled in Himes v. Barnitz, 8 Watts 45. It would have been a vain thing for the defendants to call McMurtry, the other subscribing witness, as it was already known that he would deny his own signature to the paper and testify that he had never seen it until in 1880.

The law does not require vain things. Therefore the testimony offered and received was clearly within the rule as laid down in Harrington *v.* Gable, 31 P. F. Smith 410.

It was entirely proper that, in the forming of this issue, the burden of proof should be put where it was. The plaintiff, of course, knew whether she signed the paper or not. This was the only question in the cause. Her agent and her clerk were the attesting witnesses, or appeared to be so. Proof was accessible to her, while the defendants did not pretend that they had seen the paper executed, or that they could prove by any positive testimony that it had been. The defendants were compelled to rely upon a cross-examination of the plaintiff and her employés and such secondary evidence as they might be able to find.

, Mr. Justice Paxson delivered the opinion of the court, January 3d 1882.

This was a feigned issue. A number of assignments of error have been filed to the rulings of the learned judge below.

The first criticism we have to make is to the form of the issue. It was framed to try the single question, whether a paper postponing the lien of certain judgments held by the plaintiff to the lien of certain other judgments held by the defendants, was the act and deed of the said plaintiff. The latter denied having executed such a paper, and the issue was accordingly framed to try this question of fact. In framing such an issue the party holding the affirmative should be made the plaintiff. This, however, was not done. On the contrary, the party denying the execution of the paper was made the plaintiff, and the parties asserting it were made defendants. No exception was taken to the form of the issue, and we would not, therefore, reverse on that ground. But the consequences resulting from this error are so serious, and so interwoven with the entire trial, that our duty requires us to consider them.

Had the parties been reversed, the orderly mode of trial would have been for the plaintiff to have called the subscribing witnesses, and after having, in the usual manner, proved the execution of the paper, offered it in evidence. This would have made out a prima facie case, and it would then have been for the defendants, who denied its execution, to have sustained such denial by testimony.

What actually occurred upon the trial was this: After the plaintiff's case was opened she went upon the stand and positively denied having executed the paper, or having authorized any one to execute it for her. At this point the plaintiff rested her case.

The defendants then offered the paper in dispute in evidence.

1881] OF PENNSYLVANIA. 237

[Huston v. Ticknor & Co.]

Neither the subscribing witnesses, nor any witnesses, were called to prove plaintiff's signature. The paper was admitted by the court against the objection of plaintiff. The result was the admission of a paper which had not been proved, and the execution of which had been denied by the plaintiff, who, up to this point, was the only witness who had been sworn in the cause. This error was cured in part by the defendants' subsequently calling one of the subscribing witnesses, and it is referred to now chiefly as showing the incongruous results flowing from the original error in the form of the issue. This will further appear by reference to the third assignment of error. In reply to the objection of plaintiff's counsel, that the signature to the paper had not been proved, the court replied: "They do not have to. The very matter in dispute; you introduced it in evidence the first thing. It is in evidence, practically and substantially, and you may read it if you like. You could not go a step without it. This verdict would have to be for the defendants if that paper was not in evidence. It does not need to be proven. It is in dispute." We are entirely unable to see how a paper that is in dispute requires no proof, nor how a refusal of the court to admit the paper without proof would entitle the defendants to a verdict. In Harrington v. Gable, 31 P. F. S. 410, which was a feigned issue to try the execution of a judgment note, the plaintiff offered the note in evidence without proof of its execution. The court below rejected it, which ruling was affirmed by this court, WOODWARD, J., saying: "The offer of the note and of the record of the judgment, at the opening of the cause, was premature, and was properly rejected." It is true, in the case cited, the issue was properly framed, the plaintiff being the party holding the affirmation of the issue. This, however, we think, is not material, for reasons which will be stated hereafter.

The most serious result, however, consequent upon the form of the issue, was the shifting of the burden of proof. This is a radical error, and underlies the entire case. The learned court instructed the jury: "Gentlemen: The plaintiff in this case is C. A. Huston, and she alleges it is not her signature, and the burden of proof is upon her to show that it is not her signature. She is the actor in this suit, and the burden of proof is upon her."

The learned judge was evidently misled by the form of the issue. This leads us to consider the question, how far the plaintiff, having submitted to be placed in the front of the battle, without an exception, can now take advantage of the ruling of the court upon this point.

The general rule of law is, that the burden of proof lies upon the party, who substantially asserts the affirmative of the

[Huston *v.* Ticknor & Co.]

issue. "And regard is had in this matter to the substance and effect of the issue, rather than to the form of it:" Greenleaf on Evidence, § 74. The narr. in this case is in the usual form of a wager. It is true C. A. Huston is the actor, and this makes the whole thing excessively awkward. Regarding, however, the substance, we find on her part nothing but a denial of what the defendants had previously asserted, to wit, that the paper in question was her act and deed. She was, therefore, merely asserting a negative, and under no rule of law, was the burden of proof upon her. The order of court or arrangement by which she was made the plaintiff, might perhaps control the order of proceedings, but it could not abrogate well-established rules of evidence and deprive her of the legal presumptions to which she was entitled. The 9th and 15th assignments are sustained.

There was also error in the answer of the court to the plaintiff's fourth point. The said point is as follows:—"That if the jury believe the testimony of Ticknor and Litchfield, that W. T. McMurtry signed a paper called a postponement in their office, saying that he had seen Miss Huston sign the same, Miss Huston not being present, he is not a subscribing witness to the paper, and proof of the genuineness of his signature is not evidence of the execution of said paper by Miss Huston," which point the learned judge answered by saying, "McMurtry is a subscribing witness, if he signed the paper in question, and proof of his signature is a part of the common law proof of the execution of the paper."

The paper referred to bore upon its face the name of W. T. McMurtry as a subscribing witness. Prima facie, therefore, he was such. The defendants, however, did not call him to sustain the paper. It was shown by the testimony of each of the defendants, that McMurtry brought them the paper purporting to be signed by Miss Huston, and by D. F. Booth as a subscribing witness; that he stated he had seen them both sign, and then, in the absence of Miss Huston, appended his own name as a subscribing witness, remarking at the time that "two witnesses were better than one." The plaintiff in rebuttal called Mr. McMurtry, who flatly denied his signature to the paper, after which the defendants called several witnesses to prove that it was his signature.

It is plain from the defendants' own showing that McMurtry was not a subscribing witness. He did not sign as such in the presence of Miss Huston, nor at her request. The familiar rule upon this subject is accurately stated by Mr. Greenleaf in his work on Evidence, at § 569: "A subscribing witness is one who was present, when the instrument was executed, and who at that time, at the request or with the assent of the party,

[Egbert *v.* Payne.]

subscribed his name to it, as a witness of the execution. If his name is signed, not by himself, but by the party, it is no attestation. Neither is it such, if, though present at the execution, he did not subscribe the instrument at that time, but did it afterwards and without request, or by the fraudulent procurement of the other party. But it is not necessary that he should have actually seen the party sign, nor have been present at the very moment of signing; for, if he is called in immediately afterwards, and the party acknowledges his signature to the witness, and requests him to attest it, this will be deemed part of the transaction, and, therefore, a sufficient attestation." The rule is laid down in a similar manner in Bouvier's Law Dictionary, vol. 2, p. 555.

In view of the foregoing state of facts, it was error for the court to instruct the jury as a matter of law that McMurtry was a subscribing witness to the paper, and that proof of his signature was proof of its execution. It was the more hurtful, as the effect of such proof, under the ruling of the court, was to contradict the plaintiff's statement that the signature was not hers.

This disposes of all the serious errors in the case. Complaint is made of the charge, in several of the assignments, particularly of inaccuracies as to the statement of the facts. As it is manifest, that only a portion of the testimony is printed, we will not attempt a review of those portions of the charge, feeling confident if any such errors exist, the learned judge will correct them upon another trial.

Judgment reversed, and venire facias de novo awarded.